661 A.2d 403

**Michelle Duchene INGEBRETHSEN, Appellant,**

v.

**Karl INGEBRETHSEN.**

Superior Court of Pennsylvania.

Argued April 19, 1995.

Filed July 10, 1995.

Joanne Zack, Philadelphia, for appellant.

Before WIEAND, BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order entered February 2, 1994, holding appellant, Michelle Duchene Ingebrethsen, in contempt. Appellant raises the following issue for our review.

UNDER ALL OF THE CIRCUMSTANCES, WAS THE TRIAL JUDGE'S ORDER OF 90–DAY INCARCERATION, UNSUPERVISED VISITATION AND OTHER DETERMINATIONS UNREASONABLE AND UNSUPPORTED BY THE PRESUMPTION OF ALLEGATIONS OR OPINIONS WHICH LACKED FACTUAL EVIDENCE AND A RESULT OF PARTIALITY, JUDICIAL PREJUDICE AND BEING SEXUALLY BIASED, THEREBY REPRESENTING A GROSS ABUSE OF DISCRETION?

Appellant's Brief at 6. For the following reasons, we reverse.

Appellant and appellee, Karl Ingebrethsen, were married on July 2, 1983 and one child, E.I., was born on April 8, 1986. The parties eventually divorced and appellant retained primary physical custody of E.I.

On April 28, 1993, the Honorable R. Barry McAndrews granted appellee partial custody and visitation every other weekend commencing May 1, 1993. Appellant filed a motion to stay the April 28, 1993 order, but on September 15, 1993, the Superior Court denied appellant's motion. In the interim, appellee filed a petition for contempt stating that appellant had failed to deliver the child to appellee as required by the April 28, 1993 order. On November 15, 1993, Judge McAndrews found appellant in contempt for failing to appear with the child and remanded her to jail. The parties subsequently

reached an agreement regarding custody and the trial court purged appellant of contempt.[1]

On the weekend of November 28, 1992, while visiting with appellee, E.I. sustained head and arm injuries. The injuries were reported to the City of New York Child Welfare Administration and that bureau wrote to Judge McAndrews explaining that their office was investigating a case against appellee and that they had advised appellant to suspend appellee's visitation rights as they were contemplating filing an abuse petition against appellee. The letter also mentioned that there was a history of sexual abuse by appellee's sister, and that the child told the child welfare worker that appellee "punched me in the face."

On December 28, 1993, appellant filed an emergency petition seeking to modify the November 15, 1993 custody agreement. Appellee then filed a petition for contempt stating that appellant had not deliver E.I. to appellee, as mandated by the custody agreement, on December 25, 1993. On November 2, 1994, a hearing was held before the Honorable Michael J. Kane. E.I. testified that appellee punched him in the face and that he is afraid of his father. N.T., February 2, 1994 at 101, 103 and 107–108. Appellant testified that she took E.I. to the hospital on November 28, 1994 after he returned from visiting appellee and that E.I. was x-rayed and treated for loose teeth and swelling. N.T., February 2, 1994 at 37–38. Appellant further testified that she contacted Bucks County Children and Youth Services, explained the situation to the emergency case worker and was advised to suspend visitation. N.T., February 2, 1994 at 45–46. The case worker, Sally Gilbert, testified that she advised appellant, based upon the letter from the New York Child Welfare department, to temporarily disobey the order. N.T., February 2, 1994 at 61–62. E.I.'s psychologist, Dr. Cevasco, also testified that E.I. was afraid of

1. We note that Judge McAndrews originally sentenced appellant to 90 days incarceration for failure to obey the court order, but suspended sentence on the condition that appellant abide by the agreement between the parties. However, later in the hearing Judge McAndrews explicitly stated that appellant was purged of contempt. N.T., November 15, 1993 at 10–11, 17.

his father and recommended supervised visitation to allay the child's anxiety. N.T., February 2, 1994 at 73–74. Two protection from abuse orders, dated 1/12/94 and 1/26/94, filed against appellee in New York were also introduced at the hearing. At the end of the hearing Judge Kane held appellant in contempt of the April 28, 1993 and November 15, 1993 orders and sentenced her to jail for 90 days without the opportunity to purge herself of the finding. Appellant filed a motion to stay her sentence, which was denied February 25, 1994. This timely appeal followed.

Appellant challenges the contempt order as well as the custody order allowing unsupervised visitation. However, as appellant's notice of appeal challenges only the order of contempt, and the custody order was not appealed within 30 days, only the contempt order is before us. Pa.R.A.P. 902, 903 and 904.

■ First we must consider whether the contempt order has become moot as appellant has already served the 90 day sentence. Where the trial court acts beyond its authority by failing to afford contemnors their procedural due process rights, the appeal will not be considered moot. *Altemose Construction Co. v. Building & Construction Trades Council,* 449 Pa. 194, 216, 296 A.2d 504, 516 (1972) (plurality opinion, but six participating justices agreed on contempt issue), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973), *Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622 (1993), *appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994). Because we find the denial of procedural due process rights here more egregious than the situation presented in either *Altemose* or *Smith,* we find this matter is not moot.

■ We now turn to the merits of the appeal. First, we note that

a civil adjudication of contempt coerces with conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of impris-

onment or a fine which the contemnor is powerless to escape by compliance.

*Schnabel Assoc. v. Building and Construction Trades Council,* 338 Pa.Super. 376, 385–86, 487 A.2d 1327, 1332 (1985) (quotations omitted). *See also Commonwealth v. Aikins,* 422 Pa.Super. 15, 618 A.2d 992 (1993). Here, appellant was subject to criminal contempt as she did not have the opportunity to purge herself of the contempt finding. Consequently, she was entitled "to the essential procedural safeguards that attend criminal proceedings generally." *Crozer–Chester Medical Center v. Moran,* 522 Pa. 124, 132, 560 A.2d 133, 137 (1989). *See also Commonwealth v. Brown,* 424 Pa.Super. 333, 622 A.2d 946 (1993); *Fatemi v. Fatemi,* 371 Pa.Super. 101, 111, 537 A.2d 840 (1988). These protections include the right to bail, the right to be notified of accusations against him or her and reasonable time to prepare a defense, the assistance of counsel, and the right, upon demand, to a jury trial. *Schnabel,* 338 Pa.Super. at 387, 487 A.2d at 1333. Finally, "the law is clear that in criminal contempt proceedings, guilt must be proved beyond a reasonable doubt." *Vito v. Vito,* 380 Pa.Super. 258, 267, 551 A.2d 573, 577 (1988).

In the instant case, appellant was denied several of the procedural safeguards to which she was entitled. Interestingly, the trial court cites 23 Pa.C.S. § 4346 which requires "an order committing a person to jail under this section shall specify the condition which, when fulfilled, will result in release of the obligor." However, the trial court failed to follow the dictates of this very statute. Rather, the trial court in its opinion refers flippantly to "the procedural nicities [sic]." However, where an individual is sentenced to imprisonment, we decline to overlook the basic procedural mandates which would have protected appellant's fundamental due process rights.

For the above reasons, we reverse the contempt finding.[2]

Reversed.

WIEAND, J., files a concurring statement.

---

2. Unfortunately, appellant has already served the full 90 day sentence.

WIEAND, Judge, concurring:

I concur in the decision to reverse. In my judgment, however, the contempt was civil in nature; and the trial court's error was in failing to include in its order the conditions which, when fulfilled, would enable the appellant to purge herself of contempt and be released from prison.