J-A14018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DIANA L. SWISHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT C. KEMMERER | |
| Appellant | No. 1967 MDA 2013 |

Appeal from the Order and Judgment of Sentence Entered October 17, 2013
In the Court of Common Pleas of Franklin County
Domestic Relations at No(s): DRS 1999-675
PACSES NO. 631101412

| | |
|---|---|
| KATHLEEN M. O'CONNOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT C. KEMMERER | |
| Appellant | No. 1968 MDA 2013 |

Appeal from the Order and Judgment of Sentence Entered October 17, 2013
In the Court of Common Pleas of Franklin County
Domestic Relations at No(s): DRS 2006-00915
PACSES NO. 875108741

BEFORE:  FORD ELLIOTT, P.J.E., OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                   **FILED SEPTEMBER 16, 2014**

Appellant, Robert C. Kemmerer, appeals from an October 17, 2013 order and judgment of sentence holding him in civil and criminal contempt. We affirm.

The trial court summarized the relevant facts as follows:

* Retired Senior Judge assigned to the Superior Court.

The current appeal arises from two long[-]standing support orders, one issued on April 2, 2008 for Kathleen O'Connor, and another issued on March 19, 2009 for Diana Swisher. The April 2, 2008 [o]rder directed Appellant to pay $216.66 per month in arrears for the support of his dependents(s), and as of May 1, 2013, Appellant had accumulated arrearages of $10,316.02. The March 19, 2009 [o]rder directed Appellant to pay $181.17 per month plus $21.73 per month in arrears for the support of his dependents(s), and as of May 1, 2013, Appellant had accumulated arrearages of $5,097.50. Prior to this appeal, Appellant has been held in contempt several times for his perpetual failure to pay.

The most recent [p]etitions for [c]ontempt filed on May 1, 2013 and August 26, 2013 are implicated in this appeal. On May 1, 2013, two [p]etitions were filed (one in each case) ordering Appellant to appear in court on June 6, 2013 at 1:00 p.m. in the assigned courtroom for a contempt hearing, and notifying Appellant that if he failed to appear, a bench warrant would be issued for his arrest. Appellant in fact did fail to appear and the [c]ourt issued a bench warrant in each case on June 13, 2013.

Appellant was apprehended and attended a bench warrant hearing on August 26, 2013. The [c]ourt continued the hearing until September 12, 2013, when a full evidentiary hearing could be held on Appellant's failure to appear on June 6, 2013. Therefore, on August 26, 2013, [p]etitions for contempt were again filed in both cases, directing Appellant to appear in court on September 12, 2013 at 1:00 p.m. in the assigned courtroom for a hearing. The [p]etitions informed Appellant that if he failed to appear, a bench warrant would be issued for his arrest. Also on August 26, 2013, via a [d]omestic [r]elations [d]etainer, the [c]ourt detained Appellant until his September 12, 2013 hearing and conditioned his release upon payment of $600[.00.] Appellant was subsequently released after making the $600[.00] payment to the [d]omestic [r]elations [s]ection.

On September 12, 2013, Appellant again failed to appear at the noticed and scheduled hearing, and bench warrants were issued for his arrest on September 17, 2013. Appellant was apprehended and brought before the [c]ourt for a bench warrant hearing on October 17, 2013. In the interest of judicial economy and Appellant's proven history of failing to attend scheduled

proceedings, the [c]ourt held a joint contempt hearing on Appellant's failure to appear on June 6, 2013 and September 12, 2013, and Appellant's failure to comply with the support orders in each case. After conducting the hearing, the [c]ourt found Appellant in contempt and sentenced him to 180 days incarceration, work release eligible, for his failure to appear on June 6, 2013, and September 12, 2013. The [c]ourt also sentenced Appellant to an additional, consecutive, 120 day sentence with a purge amount of $500.00 in each case ($1,000[.00] total) for Appellant's failure to comply with the support orders. Appellant has appealed the [c]ourt's contempt findings.

Trial Court Opinion, 12/11/13, at 2-4 (record citations omitted).[1]

Appellant's brief raises the following questions for our review:

Whether the bench warrant court failed to provide Appellant with all of the essential procedural safeguards that attend criminal proceedings prior to the court's finding of indirect criminal contempt, thereby invalidating the court's sentence of 180 days['] imprisonment?

Whether the bench warrant court's sentence for civil contempt is, in reality, a criminal contempt sentence and should be vacated because the court failed to afford Appellant all of the essential procedural safeguards that attend criminal proceedings prior to the court's finding of contempt?

Whether the imposition of a civil contempt sentence, which has as one of its purge conditions, the condition of serving a consecutive jail sentence prior to being eligible to purge himself of civil contempt, or obtaining employment, violates the rule prohibiting a court from imposing purge conditions on a civil contempt sentence which a contemnor does not have "the present ability" to comply?

Appellant's Brief at 7 (complete capitalization omitted).

_____

[1] Both parties and the trial court have complied with the requirements of Pa.R.A.P. 1925.

We have carefully examined the submissions of the parties, the opinion of the trial court, and the certified record on appeal. Based upon our review, we are satisfied that Appellant is not entitled to relief for the reasons expressed in the trial court's opinion. Moreover, except as noted below, we adopt the trial court's opinion as our own since we find that the trial court has adequately and accurately addressed each of the claims Appellant raises on appeal.[2] Therefore, we direct the parties to include a copy of the trial

_____

[2] In this case, the trial court held that Appellant's failure to appear constituted indirect criminal contempt. **See** Trial Court Opinion, 12/11/13, at 8 ("Here, the behavior at issue did not occur in the presence of the court, as Appellant outright failed to appear in court. Instead, Appellant violated court orders to appear and his contempt is therefore indirect.") (internal quotation marks omitted).

We disagree with this characterization of the nature of Appellant's contempt. Our Supreme Court has held that "[a] direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business[.]" **Commonwealth v. Patterson**, 308 A.2d 90, 92 (Pa. 1973). A litigant who defies an order to appear in court may be held in direct criminal contempt. **See Commonwealth v. Ferrara**, 409 A.2d 407, 411 (Pa. 1979) (appellants brought to court under bench warrants were held in direct criminal contempt for failure to appear for either arraignment or trial); **Commonwealth v. Edwards**, 703 A.2d 1058, 1060 (Pa. Super. 1997) (failure to appear in court as required by previous court proceedings may be considered act of direct criminal contempt when defendants were finally brought to court). In view of these decisions, we conclude that Appellant's failures to appear for the contempt proceedings pursuant to the orders issued by the trial court constituted **direct** criminal contempt.

Although we have re-classified the descriptive nature of Appellant's transgression, we conclude that the trial court correctly found Appellant to be in criminal contempt of court. Pennsylvania trial courts possess an
*(Footnote Continued Next Page)*

- 4 -

inherent power to impose punishment for contempt of court. This power is memorialized in the Judicial Code, which provides:

**§ 4132. Attachment and summary punishment for contempts**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132. To demonstrate contempt where it has been alleged that a party disobeyed legal process issued by the court in violation of § 4132(2), the following elements must be established:

(1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;

(2) The contemnor must have had notice of the specific order or decree;

(3) The act constituting the violation must have been volitional; and

(4) The contemnor must have acted with wrongful intent.

***Commonwealth v. Pruitt***, 764 A.2d 569, 574 (Pa. Super. 2000) (quotations and citations omitted). Here, the trial court found ample support for each element of this four-part test and no basis for Appellant's contention that the trial court deprived him of his procedural rights. ***See*** Trial Court Opinion, 12/11/13, at 8-11. Hence, we fully adopt the trial court's conclusions as modified herein.

- 5 -

court's opinion with all future filings pertaining to the disposition of this appeal.

Order of civil contempt affirmed. Judgment of sentence for criminal contempt affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2014

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL
DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH
*Domestic Relations Section*

| | | |
|---|---|---|
| Kathleen M. O'Connor,<br>Plaintiff | : | Civil Action – Law In Support |
| | : | |
| | : | No. DRS 2006-00915 |
| v. | : | |
| | : | *PACSES* Case No. 875108741 |
| Robert C. Kemmerer,<br>Defendant/Appellant | : | |
| | : | |
| | : | Honorable Carol L. Van Horn |

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL
DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH
*Domestic Relations Section*

| | | |
|---|---|---|
| Diana L. Swisher,<br>Plaintiff | : | Civil Action – Law In Support |
| | : | |
| | : | No. DRS 1999-00675 |
| v. | : | |
| | : | |
| Robert C. Kemmerer,<br>Defendant | : | *PACSES* Case No. 631101412 |
| | : | |
| | : | Honorable Carol L. Van Horn |

**OPINION *sur* Pa.R.A.P. 1925(a) AND ORDER OF COURT**



Before Van Horn, J.

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL
DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH
*Domestic Relations Section*

| | | |
|---|---|---|
| Kathleen M. O'Connor,<br>Plaintiff | : | Civil Action – Law In Support |
| | : | |
| | : | No. DRS 2006-00915 |
| v. | : | |
| | : | *PACSES* Case No. 875108741 |
| Robert C. Kemmerer,<br>Defendant/Appellant | : | |
| | : | |
| | : | Honorable Carol L. Van Horn |

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL
DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH
*Domestic Relations Section*

| | | |
|---|---|---|
| Diana L. Swisher,<br>Plaintiff | : | Civil Action – Law In Support |
| | : | |
| | : | No. DRS 1999-00675 |
| v. | : | |
| | : | |
| Robert C. Kemmerer,<br>Defendant | : | *PACSES* Case No. 631101412 |
| | : | |
| | : | Honorable Carol L. Van Horn |

STATEMENT OF THE CASE

Appellant, Robert C. Kemmerer, is appealing two contempt findings arising from two different support proceedings involving plaintiffs Kathleen M. O'Connor and Diane L. Swisher. As the Superior Court has consolidated both cases, we will address them together. At an October 17, 2013 hearing, Appellant was found in contempt for failing to appear as ordered on September 12, 2013 and June 6, 2013.[1] Appellant was also found in contempt for failing to pay court ordered child support or complete employment search forms.[2] Appellant filed a Notice of Appeal on October 28, 2013, and a Concise Statement of Errors Complained of on Appeal

---

[1] Order of Court, Oct. 17, 2013.
[2] *Id.*

1

['Statement"] on November 18, 2013. In his Statement, Appellant raises two issues with respect to the Court's contempt findings:[3]

1. The Court committed an abuse of discretion and an error of law by denying Appellant the full panoply of rights attendant to a criminal offense, specifically, but not limited to, notice, time to prepare a defense, meaningful assistance of counsel.

2. The court [sic] entered a sentence for civil contempt. Appellant did not have the present ability to comply with the conditions imposed by the court to purge himself of civil contempt, specifically, the court imposed financial conditions which the court erroneously neglected to determine beyond a reasonable doubt that Appellant had the present ability to comply. Also, by imposing a consecutive civil contempt sentence, the court, by definition, precluded Appellant the "present ability" to purge himself of contempt until after the expiration of the preceding sentence.

The Court now responds to Appellant's Statement though this Opinion and Order pursuant to Pa.R.A.P. 1925(a).

## BACKGROUND

The current appeal arises from two long standing support orders, one issued on April 2, 2008 for Kathleen O'Connor,[4] and another issued on March 19, 2009 for Diana Swisher.[5] The April 2, 2008 Order directed Appellant to pay $216.66 per month in arrears for the support of his dependent(s), and as of May 1, 2013, Appellant had accumulated arrearages of $10,316.02.[6] The March 19, 2009 Order directed Appellant to pay $181.17 per month plus $21.73 per month in arrears for the support of his dependent(s), and as of May 1, 2013, Appellant had accumulated

---

[3] Concise Statement of Matters Complained of on Appeal, Nov. 18, 2013.
[4] Petition for Contempt – Defendant, Kathleen M. O'Connor, May 1, 2013.
[5] Petition for Contempt – Defendant, Diana L. Swisher, May 1, 2013.
[6] Petition for Contempt – Defendant, Kathleen M. O'Connor, May 1, 2013.

arrearages of $5,097.50.[7] Prior to this appeal, Appellant has been held in contempt several times for his perpetual failure to pay.

The most recent Petitions for contempt filed on May 1, 2013 and August 26, 2013 are implicated in this appeal. On May 1, 2013, two Petitions were filed (one in each case) ordering Appellant to appear in court on June 6, 2013 at 1:00 p.m. in the assigned courtroom for a contempt hearing, and notifying Appellant that if he failed to appear, a bench warrant would be issued for his arrest.[8] Appellant in fact did fail to appear and the Court issued a bench warrant in each case on June 13, 2013.[9]

Appellant was apprehended and attended a bench warrant hearing on August 26, 2013. The Court continued the hearing until September 12, 2013, when a full evidentiary hearing could be held on Appellant's failure to appear on June 6, 2013.[10] Therefore, on August 26, 2013, Petitions for contempt were again filed in both cases, directing Appellant to appear in court on September 12, 2013 at 1:00 p.m. in the assigned courtroom for a hearing.[11] The Petitions informed Appellant that if he failed to appear, a bench warrant would be issued for his arrest.[12] Also on August 26, 2013, via a Domestic Relations Detainer, the Court detained Appellant until his September 12, 2013 hearing and conditioned his release upon payment of $600.[13] Appellant was subsequently released after making the $600 payment to the Domestic Relations Section.[14]

---

[7] Petition for Contempt – Defendant, Diana L. Swisher, May 1, 2013.

[8] Petition for Contempt – Defendant, Diana L. Swisher, May 1, 2013; Petition for Contempt – Defendant, Kathleen M. O'Connor, May 1, 2013 [hereinafter referred together as "Petitions for Contempt, May 1, 2013"].

[9] Bench Warrants – Defendant, June 13, 2013.

[10] Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013, at 2; Domestic Relations Detainer, August 26, 2013.

[11] Petition for Contempt – Defendant, Diana L. Swisher, Aug. 26, 2013; Petition for Contempt – Defendant, Kathleen M. O'Connor, Aug. 26, 2013 [hereinafter referred together as "Petitions for Contempt, Aug. 26, 2013"].

[12] Id.

[13] Domestic Relations Detainers, August 26, 2013.

[14] Orders of Court, September 9, 2013; Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013, at 2.

3

On September 12, 2013, Appellant again failed to appear at the noticed and scheduled hearing, and bench warrants were issued for his arrest on September 17, 2013.[15] Appellant was apprehended and brought before the Court for a bench warrant hearing on October 17, 2013. In the interest of judicial economy and Appellant's proven history of failing to attend scheduled proceedings, the Court held a joint contempt hearing on Appellant's failure to appear on June 6, 2013 and September 12, 2013, and Appellant's failure to comply with the support orders in each case.[16] After conducting the hearing, the Court found Appellant in contempt and sentenced him to 180 days incarceration, work release eligible, for his failure to appear on June 6, 2013, and September 12, 2013.[17] The Court also sentenced Appellant to an additional, consecutive, 120 day sentence with a purge amount of $500.00 in each case ($1,000 total) for Appellant's failure to comply with the support orders.[18] Appellant has appealed the Court's contempt findings.

## DISCUSSION

### I. Standard of Review

Our appellate courts have a narrow scope of review when examining an appeal of a contempt order and will only reverse upon an abuse of discretion. *Hyle v. Hyle*, 868 A.2d 601, 604 (Pa. Super. 2005) (citing *Diamond v. Diamond*, 792 A.2d 597, 600 (Pa. Super. 2002)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Id.* (citing *Lachat v. Hinchcliffe*, 769 A.2d 481, 487 (Pa. Super. 2001)). An appellate court "must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa. Super. 2006) (quoting *Rhoades v. Pryce*, 874 A.2d 148, 153 (Pa. Super. 2005)).

---

[15] Bench Warrants – Defendant, September 17, 2013.
[16] Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013, at 4.
[17] Order of Court, October 17, 2013.
[18] *Id.*

4

## II. The Court did not err or abuse its discretion

### a. Appellant is held in criminal and civil contempt

Appellant first asserts that the Court erred and abused its discretion by denying Appellant the full panoply of rights attendant to a criminal offense such as notice, time to prepare a defense, and meaningful assistance of counsel. Appellant's contempt arises from two support actions. Punishment for contempt in support actions is governed by 23 Pa.C.S. § 4345 (failure to pay) and 23 Pa.C.S. § 4344 (failure to appear). To address this issue fully, we must first examine whether Appellant's contempt is civil or criminal. "Whether a particular order contemplates civil or criminal contempt is imperative because each classification confers different and distinct procedural rights on the contemnor." *Warmkessel v. Heffner*, 17 A.3d 408, 414 (Pa. Super. 2011) (citing *Lachat* 769 A.2d at 487).

> Civil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of the general public. This distinction between civil and criminal contempt is important because the type of contempt being punished will determine the manner in which the contempt is to be adjudicated as well as the punishment which may be imposed. *It must be noted that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive.*

*Godfrey*, 894 A.2d at 782 (citations omitted) (emphasis added). Civil contempt orders have a remedial purpose and are designed to compel an individual to comply with a court order. *See Hyle*, 868 A.2d at 604 (citing *Gunther v. Bolus*, 853 A.2d 1014, 1016 (Pa. Super. 2004)).

> The factors generally said to point to a civil contempt are these: (1) [w]here the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original ... action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the [respondent] in contempt affords relief to a private party; (4)

5

where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the [respondent] so contumelious that the court is impelled to act on its own motion.

*Warmkessel*, 17 A.3d at 414 (citations omitted).

We now turn to the Court's specific contempt findings. First, Appellant failed to appear twice at noticed hearings on June 6, 2013 and September 12, 2013. Therefore, on October 17, 2013, pursuant to 23 Pa.C.S. § 4344, the Court entered an order finding Appellant in contempt and sentenced him to 180 days incarceration, work release eligible. § 4344 states:

A person who willfully fails or refuses to appear in response to a duly served order or other process under this chapter may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following: (1) Imprisonment for a period not to exceed six months. (2) A fine not to exceed $500. (3) Probation for a period not to exceed six months.

23 Pa.C.S. § 4344. Second, Appellant failed to pay court ordered support or complete employment search forms and was held in contempt pursuant to 23 Pa.C.S. § 4345. § 4345 states:

(a) General rule.--A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following: .
(1) Imprisonment for a period not to exceed six months.
(2) A fine not to exceed $1,000.
(3) Probation for a period not to exceed one year.
(b) Condition for release.--An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S. § 4345. Appellant was sentenced to a consecutive term of 120 days with a purge amount of $500.00 for both of his cases ($1,000 total).

6

Here, the most important element in determining whether Appellant is held in civil or criminal contempt is the Court's selective application of a purge amount. As noted above, "[t]he characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive." *Colbert v. Gunning*, 533 A.2d 471, 472 (Pa. Super. 1987) (*citing In re. Martorano*, 346 A.2d 22 (Pa. 1975); *Janet D. v. Carros*, 362 A.2d 1060 (Pa. Super. 1976)). Therefore, Appellant is held in criminal contempt for his failure to appear because his sentence of 180 days incarceration is more of a punishment than a remedial measure and he was not afforded the ability to purge himself. *See Fatemi v. Fatemi*, 537 A.2d 840, 845 (Pa. Super. 1988) (citing *In re Martorano*, 346 A.2d 22, 29 (Pa. 1975) ("a contemnor who will be sentenced to a determinate term of imprisonment . . . which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally."). The "dominant purpose" of Appellant's criminal contempt sentence is to vindicate the authority of the court by reprimanding him for his repeated non-compliance. *Godfrey*, 894 A.2d at 782.

Alternatively, Appellant is held in civil contempt pursuant to his failure to comply with the support orders and complete employment search forms because his incarceration is conditioned upon the Court's imposition of $500.00 purge amounts. This contempt is clearly civil because the "dominant purpose" of imposing a sentence conditioned on a purge payment is "to coerce [Appellant] into compensating his children for the arrearages accumulated in the past." *Barrett v. Barrett*, 368 A.2d 616, 619 (Pa. 1977). Additionally, applying the factors enumerated in *Warmkessel v. Heffner*, Appellant is a private person, and holding him in contempt with the ability to purge himself affords relief to his children if/when he pays the purge amount. Also, the act of failing to pay child support or complete employment search forms is

7

primarily civil in nature. Importantly, we note that Appellant's civil sentence runs after his criminal sentence, and as of the date of this Opinion and Order, he is serving his sentence for criminal contempt.

### b. Appellant was afforded the necessary rights and procedural safeguards

#### i. Criminal contempt proceedings

As noted above, Appellant argues that the Court erred and abused its discretion by denying Appellant the full panoply of rights attendant to a criminal offense such as notice, time to prepare a defense, and meaningful assistance of counsel. After determining that Appellant was found to be in both criminal and civil contempt, we must now examine what procedural rights, if any, he should have been afforded. Considering civil and criminal contempt, "each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled." *Barrett*, 368 A.2d at 619 (citing *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 140 A.2d 814 (Pa. 1958)).

We will first address Appellant's criminal contempt finding. Criminal contempt can be either direct or indirect. *See Commonwealth v. Moody*, 46 A.3d 765, 772 (Pa. Super. 2012). Direct contempt punishes conduct occurring in the "presence of the court, thereby obstructing the administration of justice." *Commonwealth v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super. 2003) (citing 42 Pa.C.S. § 4132(3)). Alternatively, "[a] charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court." *Moody*, 46 A.3d at 772 (citations omitted). Here, the behavior at issue did not occur in the "presence of the court," as Appellant outright failed to appear in court. Instead, Appellant violated court orders to appear and his contempt is therefore indirect.

> To establish indirect criminal contempt, the Commonwealth must
> prove: 1) the Order was sufficiently definite, clear, and specific to

8

the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007) (citing *Ashton*, 824 A.2d at 1203). Indirect criminal contempt prompts the need for "the essential procedural safeguards that attend criminal proceedings generally." *Ingebrethsen v. Ingebrethsen*, 661 A.2d 403, 405 (Pa. Super. 1995) (citations omitted); *see also Hyle*, 868 A.2d at 606; *Ashton*, 824 A.2d at 1203. Additionally, guilt must be found beyond a reasonable doubt. *Ashton*, 824 A.2d at 1203. We initially note that Appellant did not have a right to a jury trial because he did not face incarceration for more than six months. *Commonwealth v. McMullen*, 961 A.2d 842, 847 (Pa. 2008). We next turn to Appellant's argument that the Court denied Appellant his criminal rights such as notice, time to prepare a defense, and meaningful assistance of counsel. It is unclear what Appellant is claiming he did not have notice of, but there is no evidence to indicate that Appellant did not have notice of the June 6, 2013 and September 12, 2013 hearings, and it was Appellant's failure to attend these hearings which prompted the Court's finding of criminal contempt. In fact, the Petitions for contempt filed on May 1, 2013 and August 26, 2013, gave Appellant clear notice of the date, time, and place of these hearings, informed him that he could be found in contempt if the court determined he "willfully failed to comply with its order for support," and explained to him that a bench warrant would be issued if he failed to appear. Turning to the September 12, 2013 hearing specifically, it was scheduled after Appellant was apprehended on a bench warrant and attended the hearing on August 26, 2013. Following the August 26, 2013 hearing, notice of the September 12, 2013 hearing was mailed to the jail as

Appellant remained incarcerated.[19] Pursuant to his failure to attend the September 12, 2013 hearing, a bench warrant was issued again and he was subsequently apprehended and brought before the Court on October 17, 2013. At the October 17, 2013 hearing, Appellant's attorney informed the Court that he failed to attend the September 12, 2013 hearing because he did not have a ride.[20] Appellant clearly knew about the September 12, 2013 hearing, yet chose not to attend.

Next, addressing Appellant's concerns about his counsel not having time to prepare a defense or not having meaningful assistance of counsel, we note that he was represented by a public defender at the October 17, 2013 hearing. At the hearing, counsel verbalized his concerns over handling the contempt proceedings as he was only prepared to represent Appellant in the bench warrant proceedings.[21] Despite counsel's apprehensions, the criminal contempt issue was both simple and synonymous with the bench warrant issue because both concerned Appellant's failure to appear. Counsel was experienced in criminal defense and capable of representing Appellant competently and meaningfully. There was no need for discovery, witnesses, or the resolution of any evidentiary issues. At the hearing, Appellant was offered an opportunity to explain why he did not appear, and his explanation that he did not have a ride was not sufficient enough basis to excuse his contempt. Appellant was in no way prejudiced as the same evidence would have been considered by the Court had the proceedings only resolved the outstanding bench warrant.

By failing to appear, Appellant was attempting to avoid the consequences of his failure to pay. Such an act was volitional and intentionally wrongful. Appellant's history shows the

---

[19] Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013, at 4; Petitions for Contempt, Aug. 26, 2013.
[20] Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013, at 7.
[21] Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013.

10

numerous opportunities provided to him for compliance with court orders, and he has been well educated on the process. Overall, Appellant was satisfactorily provided with the procedural safeguards attendant to criminal proceedings generally.

### ii. Civil contempt proceedings

For purposes of completion, we will also examine the process by which Appellant was found in civil contempt to ensure that he was afforded all necessary rights. Initially, even though Appellant was represented at the hearing by a public defender, he was not entitled to counsel because the proceedings were civil. *Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011) ("the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year.)"); *See also Rittel v. Rittel*, 485 A.2d 30, 34 n.5 (Pa. Super. 1984). Therefore, the issues concerning Appellant's counsel are moot. Additionally, Appellant was not entitled to a jury trial. *See In re Martorano*, 346 A.2d 22, 31 (Pa. 1975).

Traditionally, courts have followed a five-step process when holding an individual in civil contempt. "1) a rule to show cause why an attachment should not issue, 2) an answer and hearing, 3) rule absolute (arrest), 4) a hearing on contempt citation, and 5) an adjudication of contempt." *McMahon v. McMahon*, 706 A.2d 350, 356 (Pa. Super. 1998) (quoting *Crislip v. Harshman*, 365 A.2d 1260, 1261 (Pa. Super. 1976)); *Lowenschuss v. Lowenschuss*, 470 A.2d 970, 973 (Pa. Super. 1983). In support actions, the procedural requirements for civil contempt proceedings are simplified and outlined in Pennsylvania Rule of Civil Procedure 1910.25. Pursuant to Pa.R.C.P. 1910.25, upon an obligor's failure to comply with a support order, the obligee may file a petition for civil contempt or the domestic relations section shall file a petition for civil contempt pursuant to the guidelines promulgated by the rule. Pa.R.C.P. 1910.25

(a)(1)&(2). The petition must begin with an order of court in the proscribed form, and specifically notify an obligor of the time and place of the hearing, that a warrant may be issued for his arrest if he fails to show, and that he may be held in contempt if the court determines he "willfully failed to comply with its order for support." Pa.R.C.P. 1910.25(b). Additionally,

> (c) [t]he petition shall aver the facts alleged to constitute the failure to comply with the support order. The petition shall set forth the amount of support arrearages, if any, as provided by the domestic relations section. Unless specially ordered by the court, no answer to the petition is required.
> (d) The petition shall be served upon the respondent
> (1) by ordinary mail with the return address of the domestic relations section appearing thereon; or
> (2) by any form of mail which requires the respondent to sign a receipt; or
> (3) by a competent adult; or . . .
> (4) pursuant to special order of court.
> A respondent who attends the conference and/or hearing in person shall be deemed to have been served.
> (e) The court may issue a bench warrant as provided by Rule 1910.13-1 for failure of the respondent to appear.
> (f) The respondent shall be advised in the Order/Notice to Appear that his or her present ability to pay is a critical issue in the contempt proceeding. The respondent shall be provided with Income and Expense Statements to demonstrate financial ability to pay. At the hearing, the respondent shall be provided the opportunity to respond to any questions about his or her financial status. The trier of fact shall issue an express finding that the respondent does or does not have the present ability to pay.

Pa.R.C.P. 1910.25(c)(d)(e)&(f); *see also Lowenschuss*, 470 A.2d at 973.

After examining the contempt Petitions filed on May 1, 2013, they clearly conformed to Pa.R.C.P. 1910.25. The Petitions were in order form and gave Appellant clear notice of the date, time, and place of the hearing, informed him that he could be found in contempt if the court determined he "willfully failed to comply with its order for support," and explained to him that a bench warrant would be issued if he failed to appear. Despite this information in the Petitions, Appellant still did not appear at the scheduled contempt hearing. There is no doubt that all

required procedural steps were taken to put Appellant on notice of his civil contempt proceedings.

Once Appellant was apprehended a second time for his failure to appear on September 12, 2013, the Court decided to hold his civil contempt hearing simultaneously with his bench warrant hearing and criminal contempt hearing because Appellant's attendance was guaranteed. Appellant was therefore afforded a hearing pursuant to Pa.R.C.P. 1910.25-5, which requires a hearing to be held to incarcerate an individual as a sanction for civil contempt in a support actions. Pa.R.C.P. No. 1910.25-5 ("[n]o respondent may be incarcerated as a sanction for contempt without an evidentiary hearing before a judge."). We are confident Appellant was afforded all proper civil procedural safeguards and the Court did not commit error or abuse its discretion.

### III. Appellant's civil contempt sentence was proper

Second, Appellant argues that he does not have the present ability to purge himself, the Court neglected to determine beyond a reasonable doubt whether he had the present ability to comply, and two consecutive civil contempt sentences actually prevents Appellant from having the "present ability" to purge himself. "To be found in civil contempt, a party must have violated a court order," by a preponderance of the evidence as shown by the complaining party. *Godfrey*, 894 A.2d at 782 (citations omitted). Then, the alleged contemnor can show that he is presently unable to comply with the court order. *Id.* Non-compliance is insufficient to prove contempt because "[i]f the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven." *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (Pa. Super. 1995) (citations omitted). "[T]he court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting

13

release from imprisonment with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Warmkessel,* 17 A.3d at 415 (citations omitted).

Appellant's substantial arrearage in both cases sufficiently supports our finding by a preponderance of the evidence that Appellant willfully violated the support orders and has not made good faith attempts to comply. *See Godfrey,* 894 A.2d at 783. Upon this finding, the Appellant had the opportunity to show that he was presently unable to comply, and at his October 17, 2013 contempt hearing, Appellant testified that he has "an injured back . . . I'm unemployed and I don't work. I really have no income."[22] The Court asked Appellant how he supports himself and he said, "I live with my family . . . Every once in a while I'll do a side job try to help out . . ."[23] The Court asked him how many side jobs he had worked since June and he responded "none."[24] Despite Appellant's statements that he was unable to comply, he had made a support payment in April, 2013, and made a $600.00 purge payment so he could be released from incarceration in August, 2013.[25] The Court "did not find his testimony credible regarding his lack of income since June of 2013, particularly in light of the purge payment of $600.00 that was [recently] made."[26] Examining the totality of the evidence before it, the Court was convinced beyond a reasonable doubt that Appellant had the present ability to pay the purge payments of $500.00 in each case.

Finally, we will address Appellant's argument that by imposing two consecutive civil contempt sentences, Appellant is prevented from having the "present ability" to purge himself. Appellant's argument has no merit because he is not serving two consecutive civil contempt

---

[22] Tr. of Proceedings of Bench Warrant and Contempt Hearing, October 17, 2013, at 8.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 6, 9.
[26] Order of Court, November 25, 2013.

sentences. He is first serving an indirect criminal contempt sentence of 180 days where he is eligible for work release and then a consecutive civil contempt sentence of 120 days with a purge amount. Appellant must serve his criminal sentence first, and is not entitled to a purge payment. He is therefore correct in the fact that he does not have the "present ability" to purge himself. Appellant's criminal contempt sentence has a punitive purpose and punishes him for his failure to appear. At the termination of his 180 day sentence criminal, Appellant will begin to serve his civil contempt sentence and only then will he be able to purge himself.

## CONCLUSION

The Court properly held Appellant in both criminal and civil contempt of court. In light of the foregoing reasons, the Court did not commit an abuse of discretion or error of law because Appellant was afforded all necessary criminal and civil rights pursuant to each respective contempt finding. In the civil contempt proceedings, the Court found, beyond a reasonable doubt, that Appellant had the present ability to comply with the set purge amounts. Moreover, because Appellant's civil sentence runs consecutive to his criminal sentence, he must serve his criminal sentence before he will be afforded the opportunity to purge himself. For all the reasons stated herein, this Court respectfully requests that the Superior Court dismiss Appellant's appeal.

15

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL
DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH
*Domestic Relations Section*

| | | |
|---|---|---|
| Kathleen M. O'Connor,<br>Plaintiff | : | Civil Action – Law In Support |
| | : | |
| | : | No. DRS 2006-00915 |
| v. | : | |
| | : | |
| Robert C. Kemmerer,<br>Defendant | : | *PACSES* Case No. 875108741 |
| | : | |
| | : | Honorable Carol L. Van Horn |

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL
DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH
*Domestic Relations Section*

| | | |
|---|---|---|
| Diana L. Swisher,<br>Plaintiff | : | Civil Action – Law In Support |
| | : | |
| | : | No. DRS 1999-00675 |
| v. | : | |
| | : | |
| Robert C. Kemmerer,<br>Defendant | : | *PACSES* Case No. 631101412 |
| | : | |
| | : | Honorable Carol L. Van Horn |

## ORDER OF THE COURT

AND NOW THIS _10th_ DAY OF December, 2013 pursuant to Pa.R.A.P. 1931(c),

IT IS HEREBY ORDERED THAT the Prothonotary of Franklin County shall promptly transmit to the Prothonotary of the Superior Court the record in this matter along with the attached Opinion *sur* Pa.R.A.P. 1925(a).

16

*The Prothonotary shall immediately docket this Opinion and Order of Court and record in the docket the date it was made. The Prothonotary shall forthwith furnish a copy of the Opinion and Order of Court, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof*

By the Court,

Carol L. Van Horn, J.

copies:
Domestic Relations Office
Jennifer S. Newman, Esq., Counsel for Domestic Relations
Anthony E. Miley., Esq., Counsel for Defendant/Appellant

17